JOSEPH STAMLER and RUTH STAMLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stamler v. Commissioner
Docket No. 6720-82.
United States Tax Court
T.C. Memo 1985-119; 1985 Tax Ct. Memo LEXIS 511; 49 T.C.M. (CCH) 972; T.C.M. (RIA) 85119; March 20, 1985. *511 Ps were the sole shareholders of KPLS, Inc., a corporation formed to operate a radio station. In 1974, following the liquidation of the corporation, Ps sold the radio station assets for a cash down payment of $85,000 and an interest-bearing installment note in the amount of $215,000. Held, R's determination of interest income and capital gain received by Ps pursuant to the installment note during the years in issue sustained; Held further, Ps are not entitled to a 1976 business expense deduction in excess of the amount allowed by R; Held further, R's useful life determination for certain rental property held by Ps sustained; Held further, Ps entitlement to income-averaging for the years in issue determined; Held further, additions to tax for negligence under section 6653(a), I.R.C. 1954, sustained. Joseph Stamler and Ruth Stamler, pro se. Patricia Anne Golembiewski, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1] *512 1975
$5,422
$271
1976
6,122
306
1977
8,594
430
1978
6,415
321
1979
6,788
339
After concessions, the issues for decision are: 1) the amount, if any, of interest income and capital gain petitioners should have reported during the years in issue from the installment sale of certain radio station assets; 2) whether petitioners are entitled to a 1976 business expense deduction in excess of the amount allowed by respondent; 3) the useful life of two condominium units held by petitioners as rental property; 4) whether petitioners are netitled to income-average for 1971 through 1979; and 5) whether petitioners are liable for the addition to tax for negligence under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by the reference. Petitioners Joseph Stamler (petitioner) and Ruth Stamler, husband and wife, resided in Rohnert Park, California, at the time their petition was filed. Sale Of Radio Station Assets
Petitioners were the sole shareholders of KPLS, Inc. (hereinafter referred to as KPLS or *513 the corporation), a California corporation incorporated on March 28, 1966, to operate radio station KPLS (the radio station). Subsequent to its incorporation, the Federal Communications Commission (FCC) assigned a radio station broadcast license to KPLS for the operation of the radio station. KPLS and petitioners operated the radio station from 1966 until the corporation's liquidation and dissolution in 1974. During the period of the radio station's operation, petitioners loaned $83,000 to KPLS.In return, the corporation executed interest-bearing promissory notes to evidence the outstanding loan amounts. On May 20, 1974, petitioners executed a sales agreement transferring the radio station assets, including the corporation's right, title and interest in the broadcast license but excluding cash on hand and petitioner's pre-paid rent deposit, to Hugh Turner, James Lange, Margaret Lange and Radio 1150, Inc. (the purchasers). The sales agreement provided that petitioners would sell the radio station assets subsequent to the corporation's liquidation as follows: On or before closing date, Seller corporation will, pursuant to Section 333 of the Internal Revenue Code, distribute all assets *514 of said corporation to its sole shareholders by way of liquidating dividend, and said shareholders shall be bound by all covenants, promises and warranties expressed herein, and shall faithfully perform all the duties and obligations of said corporation toward Buyer. The sale agreement referred to petitioners and the corporation as "Seller". Petitioners signed the sales agreement individually and as officers of the corporation. The purchasers agreed to pay petitioners $300,000 for the radio station assets, the consideration consisting of a cash downpayment in the amount of $85,000 and an installment note in the amount of $215,000. The note provided for an 8.5 percent interest rate. On October 11, 1974, FCC approved the assignment of the radio station broadcast license from KPLS, Inc. to Radio 1150, Inc. [2]
On October 15, 1974, petitioners adopted a resolution to liquidate the corporation under section 333. On November 7, 1974, petitioners executed a Form 966 (Corporate Dissolution or Liquidation). Subsequent to October 15, 1974, petitioners received the radio station assets in conformity *515 with section 333. Petitioners did not assume any liabilities of the corporation in the liquidation. On October 22, 1974, petitioners executed a bill of sale which provided in pertinent part as follows: NOW THEREFORE, KPLS, Inc., and JOSEPH STAMLER and RUTH STAMLER, his wife, individually, hereby and by these presents sell, transfer and convey and assign all their right, title and interest in and to the license to operate Radio Station KPLS, Santa Rosa, California, on 1150 Kc, together with the right to use the call letters "KPLS"; Real Property of approximately 11.78+ acres located on Medica Road, Santa Rosa, California, together with all appurtenances thereon, the same being the transmitter site commonly known as that certain property lying in Rancho Cabeza de Santa Rosa, Township 7 North Range 7 West, M.D. & M., and being a portion of Lot 33 as shown on Map entitled "McDonald Ranch Subdivision" and recorded in Book 29 of Maps, page 5, Sonoma County Records; together with personal property, including leases and contracts as set forth in Exhibits "A" through "D" of the said Sale and Purchase Agreement dated May 20, 1974, said sale, transfer, assignment and conveyance being upon all *516 the terms and conditions as set forth in said Sale and Purchase Agreement, which Agreement, together with Exhibits "A" through "D" is attached hereto and incorporated herein as though fully rewritten and set forth at length. Petitioners signed the bill of sale as "Joseph Stamler and Ruth Stamler." Petitioners did not sign the bill of sale in a representative capacity for the corporation. On December 31, 1974, petitioners filed a Certificate of Winding Up and Dissolution with the Secretary of State of California. At the time of dissolution, the corporation's notes in the amount of $83,000 payable to petitioners remained outstanding. The corporation also possessed net operating losses totalling $72,352.93 from 1972, 1973 and 1974. On their 1974 Federal income tax return, petitioners elected to report the gain from the sale of the radio station assets pursuant to the installment method. On an installment sale computation schedule attached to that return, petitioners reported total taxable gain of $159,361.65 from the sale of the radio station assets. Dividing the total taxable gain of $159,361.65 by the $300,000 contract price, petitioners computed that approximately 53 percent (the *517 gross profit percentage) of each principal payment received pursuant to the note would constitute capital gain. On Schedule D (Capital Gains and Losses) of their 1974 return, petitioners reported $45,727.82 as the recognized gain to be reported in 1974. From January, 1975, through December, 1979, petitioners received $1,866.40 per month pursuant to the terms of the installment note. These payments consisted of principal and interest as follows: Year
Principal
Interest
1975
$4,347.32
$18,049
1976
4,731.58
17,665
1977
5,149.81
17,250
1978
5,605.02
16,792
1979
6,100.46
16,296
Petitioners failed to report any of the interest income or capital gain they received from the sale of the radio station assets during the years in issue (1975-1979). In the notice of deficiency, respondent determined that petitioners should have reported 53 percent of each principal payment and 100 percent of each interest payment as capital gain and interest income, respectively. Useful Life - Rental Unit
On November 9, 1976, petitioners purchased a used condominium unit. On June 4, 1979, petitioners purchased a 50 percent interest in a new condominium unit. Both units were held as rental property. On Form 4831 of their 1977 and *518 1978 Federal income tax returns, petitioners claimed depreciation of $6,890 and $2,890, respectively, for the used condominium unit. On Schedule E of their 1979 return, petitioners claimed depreciation of $2,727 for the used condominium unit and $6,740 for their interest in the new condominium unit. Petitioners claimed a 20 year useful life for each unit. In the notice of deficiency, respondent partially disallowed the depreciation claimed by petitioners after determining that the useful life of each condominium unit was 30 rather than 20 years. Business Expenses
On their 1976 Federal income tax return, petitioners deducted business expenses totalling $4,440.Respondent subsequently determined that petitioners were entitled to a business expense deduction in the amount of $3,826. Prior to the issuance of the notice of deficiency, petitioners executed a Form 1902-E consenting to respondent's adjustment. OPINION Issue 1. Interest Income and Capital Gain From the Sale of Radio Station Assets
In 1974, petitioners received a cash downpayment of $85,000 and an installment note in the amount of $215,000 for the sale of certain radio station assets. The note provided for monthly payments *519 of principal and interest in the amount of $1,866.40. Petitioners realized gain of $159,361.65 on the sale of the radio station assets. On their 1974 Federal income tax return, petitioners elected to report this gain on the installment method. On that return, petitioners reported $45,727.82 as the recognized gain from the installment sale to be reported in 1974. From 1975 through 1979, however, petitioners failed to report the remaining taxable gain or the interest income they received pursuant to the note. The first issue for decision is the amount, if any, of capital gain and interest income petitioners' should have reported during the years in issue from the installment sale of the radio station assets. Petitioners argue that because the substance of the transaction was a sale of the radio station assets by KPLS, Inc., the corporation, rather than petitioners, should have reported the capital gain and interest income they received pursuant to the installment note during the years in issue. Petitioners alternatively contend that if we find them taxable on the interest income and capital gain received pursuant to the note, they are entitled to: 1) offset the capital gain and interest *520 income by the 1972, 1973 and 1974 net operating losses of KPLS, Inc. and 2) either include the amount of the loans they made to KPLS, Inc. which remained outstanding at the time of the corporation's liquidation in the basis of the radio station assets when computing the sale's gross profit percentage or claim a non-business bad debt deduction equal to the outstanding loan amounts. Conversely, respondent contends that because the form as well as the substance of the transaction was a sale of the radio station assets by petitioners, petitioners are taxable on the interest income and capital gain they received pursuant to the note. Respondent further argues that because KPLS, Inc. is a taxable entity separate and distinct from petitioners, petitioners are not entitled to claim the corporation's net operating losses. Finally, respondent maintains that petitioners correctly computed the sale's gross profit percentage on the installment sale computation schedule attached to their 1974 Federal income tax return. Under section 453, if a taxpayer elects to report the gain from an installment sale of property on the installment method, he must report as income in any taxable year that proportion *521 of the principal payments actually received during the year which the anticipated gross profit bears to the total contract price (the gross profit percentage). Section 453(a)(1); Section 1.453-1(b), Income Tax Regs. A cash method taxpayer must also include the interest portion of each installment payment in gross income when actually or constructively received. Section 1.451-1(a), Income Tax Regs.
Petitioners do not dispute respondent's determination of the amount of principal and interest they received pursuant to the note during the years in issue. Rather, petitioners argue that because the substance of the transaction was a sale of the radio station assets by KPLS, Inc., the corporation is taxable on the interest income and capital gain realized as a result of the sale. [3] We, however, are not persuaded by this argument. In Commissioner v. Court Holding Co.,324 U.S. 331, 334 (1945), the Supreme Court held: The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property *522 are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. In United States v. Cumberland Public Service Company,338 U.S. 451, 454-455 (1950), the Court noted, however, that: This language does not mean that a corporation can be taxed even when the sale has been made by its stockholders following a genuine liquidation and dissolution. While the distinction between sales by a corporation as compared with distribution in kind followed by shareholder sales may be particularly shadowy and artificial when the corporation is closely held, Congress has chosen to recognize such a distinction for tax purposes. In the instant case, the form of the transaction identifies petitioners as the sellers of the assets. The terms of the sales agreement provided that petitioners would sell the assets following the liquidation of the corporation. The bill of sale referred to the sellers *523 as "Joseph Stamler and Ruth Stamler, his wife, individually . . .". Petitioners signed the bill of sale in their individual capacity and not as officers or agents of the corporation. Finally, petitioners, rather than the corporation: 1) received the cash downpayment made pursuant to the note; 2) computed the gain from the sale of the radio station assets on an installment sale computation schedule attached to their 1974 Federal income tax return; and 3) reported the gain to be recognized from the asset sale in 1974 on their 1974 return. The record contains no evidence to support petitioners' contention that the substance of the transaction differed from its form. We therefore find that petitioners are taxable on the interest income and capital gain they received pursuant to the note during the years in issue. We are unpersuaded by petitioners' alternative argument that they are entitled to offset the interest income and capital gain they received pursuant to the note during the years in issue by the corporation's net operating losses for 1972, 1973 and 1974. In Erskine v. Commissioner,16 B.T.A. 1080, 1083 (1929), we noted that: A corporation which is subject to tax under the revenue *524 laws is a taxable entity separate and distinct from its stockholders, and a stockholder of such corporation is not entitled to deduct from his personal income any portion of a net loss sustained by the corporation. This principle is too well settled to require discussion * * *. Petitioners do not argue and the record contains no evidence that the corporation was a sham. See Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943). We therefore conclude that petitioners are not entitled to claim the corporation's net operating losses on their individual income tax returns. Petitioners also argue that they assumed the corporation's obligation to repay them $89,761. [4] *525 Petitioners thus conclude that because they did not include the amount of the assumed liabilities in the basis of the radio station assets they received in the liquidation, they erroneously computed the sale's gross profit percentage on the installment sale computation schedule attached to their 1974 Federal income tax return. [5] We disagree. Although the basis of assets received in a liquidation under section 333 includes the amount of any unsecured liabilities assumed by the shareholders in the liquidation, section 1.334-2, Income Tax Regs., petitioners have not cited, nor has our own research disclosed, any support for their contention that shareholders can assume a debt owed to themselves. Indeed, this transaction more closely resembles a cancellation of indebtedness than an assumption of liability. We therefore conclude that petitioners properly computed the sale's gross profit percentage on the installment sale computation schedule attached to their 1974 Federal income tax return. Consequently, we find that respondent properly determined that 53 percent of each principal payment received by petitioners pursuant to the *526 installment note constituted capital gain. Finally, petitioners argue that if they are not entitled to include the unpaid loan amount in the basis of the radio station assets, they are nonetheless entitled to deduct this amount as a non-business bad debt. Section 166(d)(1) allows a taxpayer to deduct a non-business bad debt in the year in which the debt becomes wholly worthless. Petitioners contend that the corporation's notes became wholly worthless in 1974. Petitioners, therefore, if entitled to the deduction, would have to claim the bad debt deduction in 1974. Crown v. Commissioner,77 T.C. 582, 598 (1981). Because the 1974 taxable year is not before us, we need not and do not decide whether petitioners are entitled to claim a non-business bad debt deduction in that year. In conclusion, we find that respondent properly determined the amount of interest income and capital gain petitioners should have reported during the years in issue. Accordingly, we sustain respondent's determination on this issue. Issue 2. Business Expense Deduction
The next issue for decision is whether petitioners are entitled to a business expense deduction for 1976 in excess of the amount allowed by respondent. *527 Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Petitioners, however, offered no evidence of the business expenses they paid or incurred during 1976. We therefore find that petitioners have failed to satisfy their burden of proving that they incurred deductible business expenses for 1976 in excess of the amount allowed by respondent. Rule 142(a). Accordingly, respondent's determination is sustained. Issue 3. Useful Life - Rental Units
The next issue for decision is the useful life of two condominium units held by petitioners as rental property. Petitioners claimed a 20-year useful life for each unit on Schedule E of their 1977, 1978 and 1979 Federal income tax returns. In the notice of deficiency, respondent determined a 30-year useful life for each unit. Section 1.167(a)-1(b), Income Tax Regs., defines the useful life of an asset as "the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business * * *." The regulation further provides that the useful life of an asset shall be determined by reference to the taxpayer's *528 "experience with similar property taking into account present conditions and probable future developments." Some of the factors to be considered are: 1) wear and tear and decay or decline from natural causes, 2) the normal progress of the art, economic changes, inventions and current developments within the industry and the taxpayer's trade or business, 3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and 4) the taxpayer's policy as to repairs, renewals, and replacements. If the taxpayer's own experience is inadequate, the regulations permit the taxpayer to use the general experience in the industry. Section 1.167(a)-1(b), supra.
Petitioners offered no evidence to support a useful life of 20 years for the two condominiums.In the absence of evidence probative of their experience or the industry's experience with similar property, we must uphold respondent's useful life determinations. Rule 142(a). Issue 4. Income Averaging
The next issue for decision is whether petitioners are entitled to income-average for 1971 through 1979. Sections 1301 through 1305 provide income-averaging for an eligible individual whose taxable income for the year in *529 which averaging is elected exceeds 120 percent of his average taxable income in the four preceding years (base period years). Respondent did not determine a deficiency in petitionerss' income tax for 1971 through 1974. We therefore have no jurisdiction to redetermine petitioners' tax liability for 1971 through 1974. See Dial v. Commissioner,24 T.C. 117, 125 (1955); Section 6214(b). With respect to the years in issue, petitioners presented copies of their Federal income tax returns for 1971 through 1974 to establish their average taxable income for the base period years. Respondent does not challenge the accuracy of these returns and concedes that petitioners may be entitled to income-average for the years in issue depending on our disposition of the other issues in this case. Since all issues remaining the dispute are decided in favor of respondent, we conclude that respondent's concession on this issue means that petitioners are netitled to some benefit from income averaging for 1975 through 1979. Consequently, the amount to which petitioners are entitled under income averaging for 1975 through 1979 will be made in the Rule 155 computation. Issue 5. Addition to Tax
The final *530 issue for decision is whether petitioners are liable for the addition to tax for negligence under section 6653(a). Section 6653(a) provides that if any part of the tax underpayment is due to negligence or intentional disregard of the rules and regulations, an amount equal to five percent of the underpayment shall be added to the tax. Petitioners bear the burden of proving that their underpayment was not due to negligence or intentional disregard of rules and regulations. Rule 142(a); Farwell v. Commissioner,35 T.C. 454 (1960). Although petitioners reported the capital gain from the installment sale of the radio station assets to be recognized pursuant to the installment method in 1974, they failed to report the interest income and capital gain they subsequently received during the years in issue. Petitioners' returns filed subsequent to the year of sale contain not the slightest hint that petitioners had changed their position on the characterization of the sale -- they simply failed to report the interest and capital gain income received in each of the years in question. To put it as charitably as possible under the circumstances, petitioners simply neglected to report items *531 of taxable income throughout a five-year period subsequent to the sale. Because we do not consider the explanation petitioners offered for these omissions to be reasonable, we find that petitioners have failed to satisfy their burden of proving that no part of the tax underpayment was due to negligence or intentional disregard of the rules and regulations. Accordingly, the addition to tax under section 6653(a) is sustained. To reflect the foregoing and prior concessions, Decision will be entered Under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure.
2. The FCC must approve the assignment of any radio broadcast license. 47 U.S.C. section 310(d)↩.
3. At trial, petitioner testified that the corporation's net operating losses would substantially reduce the capital gain realized on the sale.↩
4. Although petitioners contend in their briefs that the outstanding loans totalled $89,761 at the time of the liquidation, the stipulation of facts provides that the outstanding loans totalled $83,000. Moreover, the notes offered by petitioners as evidence of the unpaid debt totalled $83,000. 5. Although we have no jurisdiction to determine whether petitioners overpaid or underpaid their tax in 1974, we must determine whether petitioners' 1974 basis computation is correct for purposes of determining the amount of gain to be recognized for the years in issue. Section 6214(b).↩